**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**


CARL L. BUGGS,                          )
                                        )
Plaintiff,                              )
                                        )
vs.                                     )     NO. 2:04-CV-110
                                        )
ALLSTATE INSURANCE COMPANY,             )
                                        )
Defendant.                              )


**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary
Judgment, filed by Allstate Insurance Company on April 1, 2005.  For
the reasons set forth below, this motion is **GRANTED**.  The Clerk is
**ORDERED** to **DISMISS** this case with prejudice and close this case on
this Court's docket.


BACKGROUND

On June 25, 2002, the Plaintiff, Carl L. Buggs (hereinafter
"Plaintiff"), acquired the property commonly known as 707 Tennessee
Street, Gary, Indiana (hereinafter "Property"), from Joann Williams
and Alfred Southern via quit claim deed.  (Def.'s Ex. 1 to Pl.'s Dep.)
The Plaintiff did not pay any money to obtain the Property.  (Pl.'s
Dep., p. 24.)  On July 16, 2002, Plaintiff procured a general property
insurance  liability  policy  from  Allstate  Insurance  Company

(hereinafter "Defendant"), insuring the Property from damage.  (Pl.'s Resp. to Def.'s Req. for Prod. of Docs. No. 6.)  On that same day, Plaintiff transferred the Property to his son by way of a quit claim deed.  Again, the Property was conveyed without an exchange of money. Nine days later, the residence located on the Property was damaged by fire.  Subsequently, Plaintiff made a claim to Defendant with respect to the fire loss under the insurance policy he obtained with Defendant, which was denied.  This lawsuit followed.

Plaintiff initially brought suit in the Lake Circuit Court; however, the case was removed to this Court based upon diversity of citizenship.  Plaintiff's complaint is premised upon Defendant's denial of his claim for damages to the Property.  Defendant has filed the instant motion based upon its assertion that Plaintiff did not have an insurable interest in the Property.  This motion has been fully briefed[1] by the parties and is ripe for adjudication.

DISCUSSION

The standards that generally govern summary judgment motions are familiar.  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that

---

[1]In his response to Defendant's Motion for Summary Judgment, Plaintiff requests this Court issue a declaratory judgment.  This Court will not entertain Plaintiff's request as a response to a motion for summary judgment is not the proper forum to seek a declaratory judgment.  Rather, it is to be raised by way of an appropriate pleading.  *See* 28 U.S.C. § 2201(a).

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In other words, the record must reveal that no reasonable jury could find for the nonmovant.  *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant.  *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).  "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'"  *Walter v.

-3-

*Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

As a threshold matter, it is of consequence to point out this Court has subject matter jurisdiction based upon diversity of citizenship. There is no dispute that the law of the forum state applies and, as such, this Court will apply the law of Indiana in a manner as the Indiana Supreme Court would apply it. *Wolverine Mut. Ins. v. Vance*, 325 F.3d 939, 942 (7th Cir. 2003). Under Indiana law, the interpretation of an insurance policy presents a question of law to be decided by the Court." *Cincinnati Ins. Co. v. Flanders Elec. Motor Servs., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994) (citing *Tate v.*

*Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992).  Generally, in Indiana, contracts for insurance are subject to the same rules of interpretation as are other contracts."  *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985).  However, property insurance is a contract for indemnity.  "As such it entitles the insured to recover for actual loss and, to the extent the coverage anticipates an advantage or benefit to the insured, it is void as against public policy."  *Erie-Haven, Inc. v. Tippman Refrigeration Constr.*, 486 N.E.2d 646, 649 (Ind. Ct. App. 1985).  Thus, in order to maintain a valid insurance policy, the insured must have an insurable interest in the property.  *Loving v. Ponderosa Sys., Inc.*, 479 N.E.2d 531, 536 (Ind. 1995).  An insurable interest exists when one obtains a benefit from the existence of the property or would suffer a loss from destruction of the property.  *Erie-Haven*, 486 N.E.2d at 650.

Defendant seeks summary judgment in this case, arguing Plaintiff is not entitled to any recovery under the insurance policy because Plaintiff had no insurable interest in the damaged property at the time of the fire loss.  In his response brief, Plaintiff devotes a majority of his argument asserting that a valid contract existed between himself and Defendant and, therefore, the Court should not address any issues outside of the four corners of that contract, including the issue of whether Plaintiff has insurable interest in the Property.  Indiana courts have refused to acknowledge a strict contract interpretation analysis, such as Plaintiff's, as being a

dispositive issue when determining whether an insurable interest exists. *Progressive Northern Ins. Co. v. Consolidated Ins. Co.*, 673 N.E.2d 522, 524 (Ind. Ct. App. 1996). Instead, the resolution of the instant motion turns upon whether Plaintiff had an insurable interest in the Property at the time of the fire.

As set forth above, an insurable interest in property exists when the possessor of the interest benefits from the property's existence, or would suffer from its destruction. The public policy underlying the insurance interest requirement is to prevent insureds from using their coverage for illegitimate purposes. *Progressive Northern Ins.*, 673 N.E.2d at 524 (citing *Prince v. Royal Indem. Co.*, 541 F.2d 646, 649 (7th Cir. 1976). Indeed, "when insuring a loss, an insured who has no interest in the property would have nothing to lose and everything to gain by the loss of such property." *Id.* (citing *United Fire & Cas. Co. v. Reeder*, 9 F.3d 15, 17 (5th Cir. 1993).

Usually, the person having an insurable interest in the property holds title to that property. However, it is not essential for the possessor of an insurable interest to hold title to the property. *United Farm Bureau Mut. Ins. Co. v. Blanton*, 457 N.E.2d 609, 611 (Ind. Ct. App. 1983). Thus, it is possible for more than one party to have an insurable interest in real estate, and their interest need not arise from ownership. *Property Owners Ins. Co. v. Hack*, 559 N.E.2d 396, 399 (Ind. Ct. App. 1990). For example, it has been held that both lessor and lessee have an insurable interest in the property

-6-

which is the subject of the lease. *Erie-Haven*, 486 N.E.2d at 650. Likewise, both mortgagees and mortgagors have been deemed to hold insurable interests in the same piece of real estate. *Techland Dev. v. S.C. Ins.*, 291 S.E.2d 821 (S.C. 1982). Clearly, in these scenarios, all those persons held to have an insurable interest benefit in the property's existence and would suffer a loss from its destruction, which would require indemnity.

In this case, evidence has been submitted showing Plaintiff did not have title to the Property at the time of the fire. (Pl.'s Dep., pp. 50-51 and Exs. 3 and 4.) In fact, when Plaintiff quit claimed the Property to his son, Plaintiff gave his son "all right, title, interest, and claim" in the parcel. (Pl.'s Dep., Ex. 3.) In addition, it is undisputed that Plaintiff never paid any sum of money for the Property and owed no money for the Property. (Pl.'s Dep., p. 55.) Plaintiff did not pay any utility bills or property taxes for the Property (Pl.'s Dep., pp. 50 and 68), was not even living on the Property at the time of the fire, and was unsure who, if anyone, was living there. (Pl.'s Dep., p. 80.) Moreover, Plaintiff did not have any of his possessions at or on the Property at the time of the fire. (Pl.'s Dep., p. 35.)

Nevertheless, in an attempt to prove that he did have an insurable interest in the Property at the time of the fire, Plaintiff has pointed this Court to a different set of facts. Plaintiff asserts he intended to make improvements on the Property with his son (Pl's

Dep., p. 23), and states he quit claimed the Property to his son as an investment so they could have a place to live.  (Pl.'s Dep., p. 52.)  Combined, Plaintiff claims these facts give him an insurable interest in the Property.

In support of his claim that his designated facts are sufficient to create an insurable interest, Plaintiff directs this Court to *Ebert v. Grain Dealers Mut. Ins. Co.*, 303 N.E.2d 693 (Ind. Ct. App. 1973). In *Ebert*, the insured entered into an oral contract for the sale of a grain elevator and feed store to a potential buyer.  The buyer purchased the inventory and the right to operate the business, but did not purchase the buildings or the business equipment.  Shortly thereafter, a fire occurred, destroying one of the insured's buildings.  The insured had a business interruption endorsement on his insurance policy which entitled him to recover lost income during the period necessary to restore business operations.  The insured made a claim under this endorsement, which was denied.  The insured brought suit and the court found the insured did have insurable interest in the lost income, which was covered by the business interruption endorsement, because the insured retained a reversionary interest in the lost income.  *Id.* at 700.

Contrary to Plaintiff's assertions, *Ebert* does not establish that Plaintiff had an insurable interest in the Property.  If anything, this decision only further establishes Plaintiff did not have an insurable interest in the Property.  While the buyer in *Ebert* was held

-8-

to have an insurable interest due to retaining reversionary in the insured property, Plaintiff did not retain any rights in the Property after he transferred a quit claim deed to his son.

The extent, if any, of Plaintiff's interest in the Property, and thus his right to insurance proceeds, is determined at the time of the fire.  *Erie-Haven*, 486 N.E.2d at 650.  At the time of the fire, the undisputed facts show that Plaintiff's son was the sole equitable owner of the damaged property at the time of the fire.  As such, Indiana courts have taught that an insured, like Plaintiff, could receive no benefit from the property's existence.  *Bailey v. Shelter Mut. Ins. Co.*, 615 N.E.2d 508, 510 (Ind. Ct. App. 1993).  Likewise, it cannot be said that Plaintiff would be exposed to any potential loss in the event of the Property's demise or destruction.  Simply, the Plaintiff had nothing to lose and everything to gain from the loss of the Property.  Plaintiff has no reason to be indemnified in this case.  Allowing Plaintiff to maintain an insurance policy on the Property is the precise scenario that is void as against public policy.  *Progressive Northern Ins.,* 673 N.E.2d at 524.  Allstate properly denied Plaintiff's claim.

CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary

Judgment is **GRANTED**.   The Clerk is **ORDERED** to **DISMISS** this case with prejudice and to close this case.


DATED:   August 23, 2005                    S/RUDY LOZANO, Judge
                                             United States District Court